UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| JACK LEE OSBORNE, | Case No. 1:24-cv-00768-MTK |
| Plaintiff, | **AMENDED OPINION AND ORDER** |
| v. | |
| CAPT. VINCENT; DEPUTY FITTINGS; DEPUTY WHITMORE; MEDICAL NURSE ALMA, | |
| Defendants. | |

KASUBHAI, District Judge.

Plaintiff, a self-represented adult in custody (AIC), filed suit under 42 U.S.C. § 1983 and alleged that Josephine County Jail officials failed to provide adequate medical care for his serious medical needs and threatened him with retaliation for filing grievances. Defendants now move for summary judgment on all claims. For the following reasons, Defendants' motion is denied with respect to Plaintiff's claim of retaliation and granted in all other respects.

## BACKGROUND

From December 2023 to April 2024, Plaintiff was a pretrial detainee at the Josephine County Jail. Shortly after his arrival, Plaintiff requested treatment for his chronic lymphocytic

1 -   AMENDED OPINION AND ORDER

leukemia. Fitting Decl. ¶¶ 5-6 & Ex. B (ECF No. 39). Plaintiff was diagnosed with lymphocytic leukemia in 2018 and allegedly suffers from pain and neuropathy in his legs, arms, and neck. Medical staff informed Plaintiff that they could not provide treatment for his illness until they received Plaintiff's recent medical records. Plaintiff continued to send numerous requests for pain medication and other unspecified treatment. *Id.* Ex. B & Fitting Decl. Suppl. (ECF No. 44).

On January 8, 2024, Plaintiff filed Grievance No. 11832882 and complained that he had not received medical care since his arrival and requested an appointment with a doctor. *Id.* ¶ 19 & Ex. D. On January 10, 2024, Plaintiff filed Grievance No. 11853766 and repeated his complaints about the lack of medical treatment. *Id.* ¶ 21 & Ex. E.

On February 5, 2024, Deputy Fitting responded to Plaintiff's grievances and explained that medical providers had developed a treatment plan to address Plaintiff's medical condition. Fitting Decl. ¶ 23. Deputy Fitting thus determined that Plaintiff's grievances were unfounded and closed them. *Id.* ¶ 24 & Exs. D-E. Plaintiff did not appeal Deputy Fitting's response.

On February 8, 2024, Plaintiff filed Grievance No.12034977 and again asserted that he was receiving inadequate medical care. *Id.* ¶ 26 & Ex. F.

On March 1, 2024, Deputy Fitting responded to Plaintiff's grievance and stated that, in the seventy-four days Plaintiff had been detained at the Josephine County Jail, he was seen by medical staff twelve times, prescribed medication, and received other treatment deemed appropriate by his care team. *Id.* ¶¶ 28-29. Deputy Fitting determined that Plaintiff's grievance was unfounded and closed it.

On or about the same day, Deputy Fitting spoke to Plaintiff and informed him that further grievances about his medical care would be deemed duplicative and would not be accepted. *Id.* ¶ 30-31. Plaintiff claims that Deputy Fitting also threatened to place him in administrative

2 -    AMENDED OPINION AND ORDER

segregation if he filed further grievances. Pl.'s Response to Mot. Summ. J. at 3-4 (ECF No. 57); Pl.'s Dep. at 53-57 (ECF No. 41-1). Plaintiff also alleges that Deputy Fitting repeated his threat several days later, on or about March 8 and 12, after Plaintiff asked about his pending grievances. Pl.'s Am. Compl. at 6-7 (ECF No. 17); Pl.'s Dep. at 59-60 64-65. Deputy Fitting denies that he threatened Plaintiff or banned him from the grievance process. Fitting Decl. ¶¶ 37-38, 49-50.

At some point, Plaintiff appealed Deputy Fitting's March 1 response, and the reviewing sergeant agreed with Deputy Fitting's assessment. *Id.* ¶ 33-34. Plaintiff did not appeal the sergeant's response.

On March 13, 2024, Plaintiff filed Grievance No. 12251770 and requested a "copy of this grievance that [I am] not allowed to respond to anymore per c/o Fittings statement to me." *Id.* ¶ 56 & Ex. L. Because Plaintiff submitted his grievances electronically, Deputy Fitting advised him that paper copies were not available and closed the grievance. Plaintiff was not placed in segregation for filing this grievance or for any other reason. *Id.* ¶ 57.

In April 2024, Plaintiff signed the initial Complaint in this action.

## DISCUSSION

Plaintiff alleges that Deputy Fitting unlawfully retaliated against him for engaging in protected conduct by barring Plaintiff from the grievance process and threatening him with segregation if he continued to file grievances. Plaintiff further claims that Medical Technician Alma Puga, jail medical staff, and Deputy Fitting failed to provide adequate medical treatment by denying him pain medication and interfering with his medical care. Finally, Plaintiff contends that Lieutenant Vincent[1] and Deputy Whitmore, as the Jail Commander and Grievance

---

[1] Plaintiff referred to Lieutenant Vincent as "Capt. Vincent" in the Amended Complaint.

3 -    AMENDED OPINION AND ORDER

Coordinator, should have intervened and prevented the alleged violations of Plaintiff's rights. *See generally* Pl.'s Am. Compl.

Defendants move for summary judgment on grounds that Plaintiff failed to exhaust his administrative remedies and cannot succeed on the merits of his claims. To prevail on their motion, Defendants must show there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) ("If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."). Defendants must present evidence of record, together with affidavits, if any, that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If Defendants meet this burden, the burden shifts to Plaintiff to demonstrate the existence of a genuine issue of fact for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see* Fed. R. Civ. P. 56(c)(1).

The Court must construe the evidence and all reasonable inferences in favor of Plaintiff, the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). The Court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec*, 475 U.S. at 587 (citation and quotation marks omitted).

Because Plaintiff is self-presented, the Court construes his filings liberally and affords him the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 882-83 (9th Cir. 1991). However, Plaintiff must still meet his

4 -    AMENDED OPINION AND ORDER

"obligation to show a genuine issue of material fact for trial through the presentation of specific, admissible evidence." *Epling v. Komathy*, 2011 WL 13142131, at *1 (C.D. Cal. Dec. 5, 2011).

    A.  <u>Exhaustion of Administrative Remedies</u>

Under the Prison Litigation Reform Act, an AIC must exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the relevant grievance process. *Woodford v. Ngo,* 548 U.S. 81, 85, 90 (2006). An AIC must exhaust all grievance remedies before filing a § 1983 action, including appealing grievance decisions to the highest level. *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

If the defendant shows that the AIC did not exhaust available administrative remedies, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172; *see also Ross v. Blake*, 578 U.S. 632, 642 (2016) ("[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'") (citation omitted). This burden is met when the AIC shows that he or she took "reasonable and appropriate steps" to pursue administrative remedies, but prison officials nonetheless interfered with the AIC's attempts to exhaust or failed to follow correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

5 -    AMENDED OPINION AND ORDER

The Josephine County Jail has a three-step grievance process. Fitting Decl. ¶ 8 & Ex. C. First, an AIC may electronically file a grievance through a kiosk located in each cell unit. *Id.* ¶ 9. Generally, grievances must be submitted within seventy-two hours of the alleged incident, although grievances about ongoing conditions may be filed at any time. *Id.* ¶ 10 & Ex. C. After a grievance is filed, a jail official will investigate the complaint and provide a response. *Id.* ¶ 11 & Ex. C. At the second step, the AIC may appeal the response to a sergeant if the AIC is dissatisfied. Fitting Decl. ¶ 12 & Ex. C. Third and finally, the AIC may submit a final appeal to the Jail Commander if the AIC remains dissatisfied with the sergeant's response. *Id.* ¶¶ 13-14 & Ex. C.

The record reflects that Plaintiff did not pursue his grievances about inadequate medical care to final review with the Jail Commander and filed no grievances about Deputy Fitting's alleged threats. *Id.* Exs. D-F. Thus, Plaintiff did not fully exhaust his administrative remedies before filing suit, and the burden shifts to Plaintiff to show that the grievance process was effectively unavailable to him.

Plaintiff contends that he could not complete the grievance process for his claims because Deputy Fitting barred him from utilizing the grievance process and threatened Plaintiff with segregation if he attempted to do so. Pl's Am. Compl. at 5-7; Pl.'s Response to Mot. Summ. J. at 3-4, 23-24; Pl.'s Dep. at 53-57. For the reasons explained below, whether Deputy Fitting barred Plaintiff from the grievance process or threatened him with disciplinary segregation rests on credibility determinations this Court cannot make at the summary judgment stage. *See, e.g.*, *Jones v. California Dep't of Corr.*, 584 Fed. App'x 496, 496 (9th Cir. Aug. 12, 2014) (finding that dismissal on grounds of exhaustion was inappropriate when the plaintiff declared that he filed the necessary grievances to exhaust his claim); *Hubbard v. Houghland*, 471 Fed. App'x

6 -    AMENDED OPINION AND ORDER

625, 626 (9th Cir. Mar. 7, 2012) (finding that the district court improperly made a credibility determination on exhaustion without holding an evidentiary hearing).

If accepted as true, Plaintiff's allegation that he was banned from the grievance process under threat of discipline would excuse his failure to exhaust the jail's grievance process, and genuine issues of material fact preclude summary judgment on this ground.

B. First Amendment Retaliation

Plaintiff claims that Deputy Fitting violated his rights under the First Amendment by barring him from the grievance process and threatening him with segregation if he filed additional grievances.[2]

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and as well as a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015). Thus, retaliation against AICs for exercising their First Amendment right to file grievances "is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). To state a viable claim of First Amendment retaliation, Plaintiff must establish five basic elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that

---

[2] Plaintiff also asserts that Deputy Fitting violated his due process rights by barring him from the grievance process. However, Plaintiff cannot a sustain a due process claim on this ground, because an AIC does not have a "constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Further, to the extent Plaintiff's claims of retaliation rest on Deputy Fitting's grievance responses, the denial of a grievance, standing alone, is not an adverse action sufficient to establish retaliation. *See, e.g., Burgos v. Canino*, 641 F. Supp. 2d 443, 454-55 (E.D. Pa.) (finding that the rejection or denial of prison grievances does not constitute adverse action for purposes of a retaliation claim), *aff'd*, 358 Fed. App'x 302 (3d Cir. 2009); *Colvin v. Horton*, 2019 WL 3927425, at *12 (W.D. Mich. Aug. 20, 2019) (holding that the failure to process a grievance is not adverse action); *Garcia v. Sleeley*, 2019 WL 2234789, at *9 (S.D. Cal. May 22, 2019) (accord); *Dicey v. Hanks*, 2015 WL 4879627, at *5 (E.D. Cal. Aug. 14, 2015) ("[T]he denial of a grievance neither constitutes an adverse action that is more than de minimis nor is it sufficient to deter a prisoner of 'ordinary firmness' from further First Amendment activities").

7 -    AMENDED OPINION AND ORDER

prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

With respect to the fourth element, Plaintiff must show either a "chilling effect" or "some other harm." *Brodheim,* 584 F.3d at 1269. An "objective standard governs the chilling inquiry; a plaintiff does not have to show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Id.* at 1271 (quoting *Rhodes*, 408 F.3d at 568-69). While "the mere *threat* of harm can be an adverse action" and "have a chilling effect," the ultimate question is whether the statements plausibly "intimated that some form of punishment or adverse regulatory action would follow a failure to comply." *Brodheim,* 584 F.3d at 1270.

1. March 1, 2024 Comments

Plaintiff alleges that on or about March 1, 2024, Deputy Fitting summoned Plaintiff and told him that he was not allowed to file further grievances about his medical issues and that Plaintiff could retain an attorney if he wanted to file suit. Am. Compl. at 5-6. Plaintiff also claims that Deputy Fitting barred him from filing further grievances on any subject and threatened to place him in administrative segregation – the 700 cell block or "the hole" – if he did so. Pl.'s Am. Compl. at 5-7; Pl.'s Response to Mot. for Summ. J. at 3-4; Pl.'s Dep. at 53-57.

Deputy Fitting concedes that he spoke to Plaintiff on March 1, 2024 and advised Plaintiff that "his repeated grievances regarding the same issue violated the Jail's grievance procedure rules and that no further grievances on the same issues that had already been grieved would be accepted." Fitting Decl. ¶¶ 30-31. However, Deputy Fitting contends that his comments advanced legitimate correctional goals of preventing abuse of the grievance program and

8 -    AMENDED OPINION AND ORDER

ensuring compliance with grievance rules. Deputy Fitting emphasizes that Josephine County Jail rules prohibit multiple grievances regarding the same subject in order to avoid repetitive investigations that waste time and delay investigations of other grievance issues. *Id.* ¶¶ 15-16 & Ex. C.

I agree that barring Plaintiff from filing repetitive grievances advanced legitimate correctional goals pursuant to Josephine County's grievance policy. However, as noted above, Plaintiff also alleges that on March 1, 2024, Deputy Fitting banned him from filing *any* grievances and threatened him with segregation if he did so. Deputy Fitting denies these allegations and argues that Plaintiff's Amended Complaint alleges only that Deputy Fitting told Plaintiff "that he was no longer allowed to file any more grievances on my medical issue" and does not allege that Deputy Fitting barred Plaintiff from the grievance process or threatened him with segregation on March 1. *See* Am. Compl. at 5 (describing allegations against Deputy Fitting). Deputy Fitting contends that Plaintiff is bound by the allegations in his Amended Complaint and cannot now create a genuine issue of fact by arguing that Deputy Fitting banned him from the grievance system entirely and threatened him with retaliatory segregation on March 1, 2024.

Given Plaintiff's self-represented status and his previous filings, I find that Plaintiff is not barred from alleging that Deputy Fitting prohibited him from filing further grievances and threatened him with retaliation on March 1, 2024. Although not a model of clarity, Plaintiff's Amended Complaint alleges that on March 1, 2024, Deputy Fitting also stated that Plaintiff "was barred from filing any more" grievances. *See* Am. Compl. at 6. In subsequent filings and during his deposition, Plaintiff similarly alleged that Deputy Fitting barred him from the grievance process on March 1, 2024 and threatened him with segregation if he filed additional grievances.

9 -    AMENDED OPINION AND ORDER

*See* Pl.'s Exs. & Decl. at 3-4 (ECF No. 30); Pl.'s Dep. at 54-56. Thus, Plaintiff's response to Defendants' motion is consistent with his previous allegations and will not be stricken.

Ultimately, this Court must assess the parties' credibility to determine whether Deputy Fitting threatened Plaintiff with disciplinary segregation if he filed additional grievances, and the Court cannot assess credibility on summary judgment. *Anderson*, 477 U.S. at 249 (explaining that "at the summary judgment stage the judge's function is not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). Construing all inferences in favor of Plaintiff, he raises a genuine issue of material fact as to whether Deputy Fitting's alleged statements on March 1, 2024 were sufficiently threatening to constitute an adverse action that would chill a "person of ordinary firmness" from engaging in protected conduct. *Brodheim*, 584 F.3d at 1274.

    2. <u>March 8 and 12, 2024 Comments</u>

Plaintiff alleges that on or about March 8, 2024, he attempted to approach Deputy Fitting in the jail dayroom to ask about his grievances. Pl.'s Dep. at 59. Deputy Fitting allegedly raised his voice and told Plaintiff that he was "permanently" barred from the grievance system and would be placed in the "700s" or "the hole" if he attempted to file additional grievances. *Id.* at 59-60; Am. Compl. at 6-7. Plaintiff also claims that on or about March 12, 2024, shortly after he was moved to the 600 cell block, he asked whether Deputy Fitting intended to answer his recent grievance. In response, Deputy Fitting raised his voice and asked, "Are you wanting to be moved to the 700s Osborne?" Am. Compl. at 7; *see also* Pl.'s Dep. at 64-66.

Deputy Fitting argues that surveillance video and attendance records establish that he did not interact with Plaintiff on March 8 or 12, 2024 and Plaintiff cannot sustain retaliation claims arising from Deputy Fitting's alleged threats on those dates. *See* Fitting Decl. ¶ 43 & Exs. G-K.

10 -  AMENDED OPINION AND ORDER

Specifically, video footage from March 8, 2024 shows that Deputy Fitting conducted a walkthrough of Plaintiff's cell unit at 1:32 p.m. without stopping at any cell or speaking to Plaintiff. Fitting Decl. ¶ 46 & Ex. H, I. Jail records also establish that Plaintiff was moved to the 600 block on March 13, 2024 at 1:29 p.m. and not on March 12. Fitting Decl. ¶¶ 51-52 & Ex. J. On March 13, 2024, Deputy Fitting was on duty from 6:00 a.m. to 8:30 a.m., when he left for a medical appointment, and he could not have interacted with Plaintiff in the 600 cell block on that date. Fitting Decl. ¶¶ 53-54 & Ex. K. Defendants maintain that this evidence conclusively establishes that the conversations alleged by Plaintiff did not take place and Deputy Fitting did not have threaten Plaintiff with sanctions for filing grievances.

  As reflected in his Amended Complaint and deposition testimony, Plaintiff alleges that his conversations with Deputy Fitting happened "on or about" March 8 and 12, 2024. Am. Compl. at 7; Pl.'s Dep. at 62-63. During his deposition, Plaintiff explained, "I'm not positive that it was that day [March 12]. I do believe I give a rough estimate because I was trying to keep a view on those dates, but I couldn't pinpoint the date exactly. I don't know. Being in jail, in prison, and stuff, a lot of the time, days get lost." Pl.'s Dep. at 63. Plaintiff maintains that, although he is unsure of the exact dates, the conversations with Deputy Fitting took place within one or two days of the dates alleged.

  Construing all inferences in favor of Plaintiff, his alleged interactions with Deputy Fitting could have taken place within a few days of March 8 and 12, 2024, and Defendants present no evidence indicating that Deputy Fitting did not interact with Plaintiff during that time. Ultimately, Plaintiff and Deputy Fitting provide conflicting accounts of their interactions and on what date they occurred, and questions of credibility and material fact preclude summary judgment on Plaintiff's claims of retaliation.

11 - AMENDED OPINION AND ORDER

3. <u>Qualified Immunity</u>

Finally, Defendants argue that Deputy Fitting is entitled to qualified immunity, because a reasonable officer in his position would not have known that his conduct violated a clearly established constitutional right. *See White v. Pauly,* 580 U.S. 73, 78-79 (2017) ("Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal quotation marks and citation omitted) (per curiam).

It was clearly established in March 2024 that prison officials may not threaten AICs with adverse actions for filing grievances. *See Shepard v. Quillen*, 840 F.3d 686, 693-94 (9th Cir. 2016) (holding that "placing a prisoner in administrative segregation" in retaliation for filing complaints violates clearly established law); *Brodheim*, 584 F.3d at 1266, 1270-72 (finding that an officer's note "warning" an AIC "to be careful what you write, req[u]est on [a grievance] form" combined with a later recommendation to transfer the AIC constituted potential retaliation); *Bruce v. Ylst*, 351 F.3d 1283, 1289-90 (9th Cir. 2003) (holding that officers may not retaliate against an AIC for filing grievances). Construing the evidence in Plaintiff's favor, questions of fact remain as to whether Deputy Fitting threatened Plaintiff with segregation for filing grievances, and summary judgment is not appropriate on grounds of qualified immunity.

C. <u>Inadequate Medical Treatment</u>

Plaintiff next alleges that Defendant Alma Puga, jail medical staff, and Deputy Fitting were deliberately indifferent to his serious medical needs. As a pretrial detainee, Plaintiff's claims of inadequate medical treatment are properly addressed under the Fourteenth Amendment. *See Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (explaining

that, under the Fourteenth Amendment's Due Process Clause, pretrial detainees have a right against jail conditions that "amount to punishment").

An objective standard applies to claims of inadequate medical care brought under the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). Under this standard, a pretrial detainee must show that:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined [including a decision with respect to medical treatment]; (2) Those conditions put the plaintiff at substantial risk of suffering serious harm; (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (4) By not taking such measures, the defendant caused the plaintiff's injuries.

*Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 669 (9th Cir. 2021) (citing *Gordon*, 888 F.3d at 1125). "To satisfy the third element, the plaintiff must show that the defendant's actions were 'objectively unreasonable,' which requires a showing of 'more than negligence but less than subjective intent – something akin to reckless disregard.'" *Id.*

Plaintiff alleges that in January 2024, he asked Puga for pain medication as she walked through his unit. Puga allegedly responded that she could not "give him anything" and asked if Plaintiff was not given medication "on the outside," why would he receive medication at the jail? Am. Compl. at 7-8. Plaintiff concedes that Puga is a medical assistant, not a nurse, and that she is not authorized to approve medications for AICs. Puga Decl. ¶¶ 1, 4-5, 9. Plaintiff instead takes issue with the allegedly rude manner in which Puga denied his request. Pl.'s Dep. at 40. Even if Plaintiff's allegations are accepted as true, these facts do not plausibly suggest that Puga acted with reckless disregard to a serious risk of harm.

Plaintiff also asserts that jail medical staff failed to adequately treat his symptoms and provide pain relief. However, Plaintiff did not name a medical staff person as a defendant and he

13 -    AMENDED OPINION AND ORDER

cannot sustain a claim against Josephine County. A municipal entity, such as Josephine County, cannot be held liable under § 1983 solely because it employs an alleged wrongdoer. *Monell v. Dep't of Soc. Serv. of City of New York,* 436 U.S. 658, 691 (1978). To state a claim against Josephine County, Plaintiff must present evidence giving rise to a reasonable inference that (1) the County had a policy, custom, or widespread practice that caused the violation of his constitutional rights; (2) the County failed to properly train its officers and the failure to train amounts to deliberate indifference; or (3) the individual who violated Plaintiff's constitutional rights had final policy-making authority *Rodriguez v. Cnty. of Los Angeles,* 891 F.3d 776, 802-03 (9th Cir. 2018). Plaintiff presents no facts plausibly suggesting that Josephine County violated his constitutional rights pursuant to an unconstitutional policy or custom, as the result of a failure to train its officials, or by an official with final policy-making authority.

      Finally, Plaintiff alleges that Deputy Fitting acted as a "gatekeeper" regarding his medical care by denying his grievances and deeming them without merit. However, reviewing a grievance "cannot create liability under § 1983" and Plaintiff presents no evidence that Deputy Fitting was personally involved in his medical treatment. *Ramirez*, 334 F.3d at 860. Moreover, the documents filed by Plaintiff reflect that medical providers responded to his complaints, scheduled medical appointments, arranged for laboratory tests, and prescribed medication. *See* Fitting Decl. Suppl.; Exhibits attached to Pl's Response to Mot. Summ. J.; Pl.'s Exs. & Decl. (ECF No. 30 at 47-59). Plaintiff's dissatisfaction with his medical care implies negligence rather than deliberate indifference, and negligent conduct cannot sustain a claim under § 1983. *Sandoval*, 985 F.3d at 669, 682.

14 -    AMENDED OPINION AND ORDER

D. <u>Supervisory Liability</u>

Plaintiff alleges claims against Lieutenant Vincent, the Jail Commander, and Deputy Whitmore, the jail's Grievance Coordinator on grounds that they failed to adequately supervise Deputy Fitting and enforce grievance protocol when he responded to Plaintiff's grievances. However, liability under § 1983 arises upon a showing of personal participation by each Defendant, and a supervisor is not liable for the constitutional violations of employees unless the supervisor "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff presents no evidence that Lieutenant Vincent or Deputy Whitmore personally participated in the alleged violations of his rights, and summary judgment is granted on these claims.

## CONCLUSION

Defendants' Motion for Summary Judgment (ECF No. 38) is GRANTED in part and DENIED in part. Defendants' Motion is GRANTED with respect to Plaintiff's claims against Defendants Puga, Vincent, and Whitmore, and Plaintiff's claims against Deputy Fitting arising from his review of Plaintiff's grievances. Defendants' Motion is DENIED with respect to Plaintiff's claim of retaliation against Deputy Fitting arising from his alleged threat to discipline Plaintiff for utilizing the grievance process.

Within thirty days from the date of this Order, the parties shall confer and file a status report indicating whether they wish to pursue mediation or proceed to trial.

IT IS SO ORDERED.

DATED this <u>11th</u> day of August 2025.

s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge

15 -    AMENDED OPINION AND ORDER